DAVID N. WOLF (6688)
Assistant Utah Attorney General
MARK L. SHURTLEFF (4666)
Utah Attorney General
Attorneys for Defendants
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
e-mail dnwolf@utah.gov

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| WILLIAM ADAMS,<br><br>            Plaintiff,<br>v.<br><br>DR. RICHARD GARDEN, et al.,<br><br>            Defendants. | **DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Case No.  2:10cv00746<br><br>Judge David Sam |

Pursuant to Rule 56-1(b) of the Rules of Practice for the District of Utah, Defendants Richard Garden, M.D., Kennon Tubbs, M.D, and Chris Abbott, P.A. (collectively "Defendants") submit this Memorandum in Support of their Motion for Summary Judgment.

## STATEMENT OF UNDISPUTED FACTS

For purposes of this Motion for Summary Judgment only, the following facts are undisputed.

1. Plaintiff, William Adams ("Adams") is an inmate incarcerated at the Utah State Prison ("USP"), Draper, Utah.

2. Defendant Dr. Richard Garden is the Administrative and Clinical Director over health services for the Utah Department of Corrections and has been employed in this position since 2001. *Garden Decl.* at ¶ 1. (Exhibit "A")

3. Dr. Garden was not personally involved in Adams' care. *Garden Decl.* at ¶ 32.

4. Defendant Dr. Kennon Tubbs is a Medical Doctor, licensed to practice medicine in the State of Utah. Dr. Tubbs obtained his medical degree from Georgetown University School of Medicine from 1992-1996. He fulfilled his three (3) year residency requirement at Utah Valley Family Practice in Provo, Utah and became Board Certified by the American Academy of Family Physicians in 1999. *Tubbs Decl.* at ¶ 3. (Exhibit "B")

5. Dr. Tubbs maintains a private medical practice in Draper, Utah. He is also employed by the Utah Department of Corrections ("DOC") as a part-time physician at the Utah State Prison ("USP") in Draper, Utah. *Tubbs Decl.* at ¶ 4.

6. Dr. Tubbs has treated and/or otherwise diagnosed plaintiff, William Adams, on several occasions at the USP. *Tubbs Decl.* ¶ 5.

7. At the time of the incidents alleged in Plaintiff's Complaint, Defendant Chris Abott worked at USP as a Physician Assistant. Mr. Abbott's duties included

8. Defendants have access to all inmates' medical records. Those records are maintained electronically, in a system referred to as M-Track.

9. Defendants have reviewed the electronic M-Track records for inmate William Adams, as well as a copy of the printed records, labeled USP 000001-001012. *Decl. Garden* ¶ 5, *Decl. Abbott* ¶ 3 and *Decl. Tubbs* ¶ 7.

10. Adams alleges in paragraph 7 of his Complaint that he was prescribed Actonel by Dr. Sara at the Fourth Street Clinic in March, 2007. Pl.'s Compl. ¶ 7; see also *Decl. Garden* ¶ 7, *Decl. Abbott* ¶ 5 and *Decl. Tubbs* ¶ 8.

11. However, Adams Offender Location History shows he was actually incarcerated at the Utah State Prison (USP) and/or the Central Utah Correctional Facility (CUCF) from November 6, 2003 until January 29, 2008 at which time he was placed on parole. (*See* Offender Location History, attached hereto as Exhibit "D")

12. Adams was returned to the USP on June 30, 2008. *Id.*

13. Adams alleges in paragraph 8 of his Complaint that he was denied Actonel upon his return to the USP. Pl.'s Compl. ¶ 8; see also *Decl. Garden* ¶ 10, *Decl. Abbott* ¶ 6 and *Decl. Tubbs* ¶ 9.

14. On July 1, 2008, Adams was asked to fill out a Release of Information so the USP could obtain his medical records from Fourth Street Clinic. (USP-000831) *Decl. Garden* ¶ 11, *Decl. Abbott* ¶ 7 and *Decl. Tubbs* ¶ 12.

15. On July 2, 2008, P.A. Abbott verified Adams' bone scan. Adams was encouraged to ambulate to improve his bone density. (USP-000825)

16. On July 14, 2008, P.A. Abbott reviewed the notes received from the 4th Street Clinic. *Decl. Garden* ¶ 13, *Decl. Abbott* ¶ 8 and *Decl. Tubbs* ¶ 13.

17. On July 14, 2008, Adams was prescribed and received Neurontin (nerve pain medication), Elavil (pain Medication), GNP Calcium (history of osteoporosis due to low bone density), Aspirin (due to his stroke history), Lubriderm skin lotion. *Decl. Garden* ¶ 14, *Decl. Abbott* ¶ 10 and *Decl. Tubbs* ¶ 15.

18. Between July 17, 2008 and September 7, 2008, Adams was receiving Citalopram (anti-depressant), Lithium (anti-psychotic), GNP Calcium, Lubriderm, Cloebetasol (skin lotion) Elavil, Neurontin and Aspirin. *Decl. Garden* ¶ 16, *Decl. Abbott* ¶ 11 and *Decl. Tubbs* ¶ 16.

19. On September 4, 2008, Dr. Tubbs noted that Adams had normal calcium levels and Parathyroid Hormone levels. Dr. Tubbs ordered a repeat bone density scan in six months if osteoporosis is not reversed. *Decl. Garden* ¶ 17, *Decl. Abbott* ¶ 12 and *Decl. Tubbs* ¶ 17.

20. Adams was again paroled on October 28, 2008. *Decl. Garden* ¶ 17, *Decl. Abbott* ¶ 13 and *Decl. Tubbs* ¶ 18.

21. Adams was returned to the Utah State Prison on April 6, 2009 following a parole revocation. *Decl. Garden* ¶ 18, *Decl. Abbott* ¶ 14 and *Decl. Tubbs* ¶ 19.

22. Upon his return to the USP, Adams' medication history and his medical condition were evaluated. *Decl. Garden* ¶ 19, *Decl. Abbott* ¶ 15 and *Decl. Tubbs* ¶ 19.

23. Between April 7, 2009 and April 29, 2009, P.A. Abbott prescribed Adams Neurontin, GNP Calcium, Amitriptylin, Lubriderm Lotion, Clobetasol Cream and Actonel. *Decl. Garden* ¶ 20, *Decl. Abbott* ¶ 16 and *Decl. Tubbs* ¶ 21. (USP – 000858)

24. A prescription for Actonel for Adams was written on April 29, 2009. *Decl. Garden* ¶ 21, *Decl. Abbott* ¶ 17.

25. A review of Adams' medical records show he received a 90-day prescription for Actonel on a weekly basis starting on April 30, 2009, and continuing thereafter until August 10, 2009. *Decl. Garden* ¶ 22, *Decl. Abbott* ¶ 18. (USP – 000858)

26. A 90-day prescription for Actonel was renewed on August 12, 2009. Adams received his Actonel on a weekly basis up to and including to September 4, 2009. *Decl. Garden* ¶ 23, *Decl. Abbott* ¶ 19. (USP – 000858)

27. A 30-day prescription for Actonel was again renewed on September 19, 2009. Adams received his Actonel on a weekly basis up to and including to October 9, 2009. *Decl. Garden* ¶ 24, *Decl. Abbott* ¶ 20. (USP – 000857)

28. A 30-day prescription for Actonel was renewed on October 20, 2009. Adams received his Actonel on a weekly basis up to and including to November 30, 2009. *Decl. Garden* ¶ 25, *Decl. Abbott* ¶ 21. (USP – 000857)

29. A 90-day prescription for Actonel was again renewed on November 20, 2009. Adams received his Actonel on a weekly basis up to and including to February 23, 2010. *Decl. Garden* ¶ 26, *Decl. Abbott* ¶ 22. (USP – 000857)

30. An 89-day prescription for Actonel was again renewed on February 23, 2010. Adams received his Actonel on a weekly basis up to and including to May 19, 2010. *Decl. Garden* ¶27, *Decl. Abbott* ¶23. (USP – 000856)

31. An 84-day prescription for Actonel was again renewed on May 19, 2010. Adams received his Actonel on a weekly basis up to and including to June 25, 2010. *Decl. Garden* ¶ 28, *Decl. Abbott* ¶ 24. (USP – 000856)

32. A 360-day prescription for Actonel was again renewed on June 25, 2010. Adams received his Actonel on a weekly basis up to and including June 25, 2011. *Decl. Garden* ¶ 29, *Decl. Abbott* ¶ 25. (USP – 000856)

33. A 360-day prescription for Actonel was again renewed on August 10, 2011. *Decl. Garden* ¶ 30, *Decl. Abbott* ¶ 26. (USP – 000865-000866)

34. The M-Track records show Adams has continually received his Actonel on a weekly basis since his return to the Utah State Prison on April 6, 2009 and will continue to receive his Actonel on a weekly basis as long as it is medically necessary or until he paroles or is discharged from the USP. *Decl. Garden* ¶ 31, *Decl. Abbott* ¶ 27.

35. Despite the existance of medical records showing that that he has received Actonel on a weekly basis since his return to the Utah State Prison on April 6, 2009, Adams alleges he has been denied this medication in violation of his rights as set forth in the Eighth Amendment to the United States Constitution.

## ARGUMENT

Defendants are entitled to qualified immunity because Adams cannot show that any of the Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. "Qualified immunity is designed to shield public officials from liability and ensure that erroneous suits do not even go to trial." *Oliver v. Woods,* 209 F.3d 1179, 1185 (2000) (quoting *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995)). Once raised by a defendant, qualified immunity is a rebuttable presumption, and the Plaintiff's burden is to establish, first, that the defendant's actions violated a specific constitutional right. *Oliver*, 209 F.3 at 1185 (*quoting Albright*, 51 F.3d at 1534). And, second, Plaintiff must show the court that the right was clearly established when the

alleged violation occurred. In this case, Adams cannot show that Defendants were deliberately indifferent to his medical needs. On the contrary, the undisputed facts show that Dr. Garden, Dr. Tubbs and Physician's Assistant Chris Abott provided excellent, attentive medical care to Adams.

The Eighth Amendment's ban on cruel and unusual punishment requires prison officials to "provide humane conditions of confinement" including "adequate food, clothing, shelter, and medical care . . . ." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998)). To state a cognizable claim under the Eighth Amendment for failure to provide medical care "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Deliberate indifference is manifested only when prison officials "intentionally interfere with treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976) (emphasis added). In clarifying the deliberate indifference standard, the United States Supreme Court has held that a prison official cannot be found deliberately indifferent under the Eighth Amendment, "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1970) (emphasis added).

It is well established that the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state law tort claims which are otherwise

7

barred. *Estelle*, 429 U.S. at 106. Not every lapse in prison medical care will rise to the level of a constitutional violation. *Id.* In *Estelle v. Gamble*, the United States Supreme Court held that "deliberate indifference" entails more than mere negligence. 429 U.S. 97, 106 (1976). A prisoner must demonstrate more than an inadvertent failure to provide adequate medical care by prison officials to successfully establish Eighth Amendment liability. *See, e.g., Estelle*, 429 U.S. at 105-06.

Here, Adams claims Defendants refused to provide him with Actonel, a medication for the treatment of osteoporosis which was previously prescribed by the Fourth Street Clinic. To begin with, the fact that Adams was incarcerated at the time he claims the Fourth Street Clinic prescribed treatment which included Actonel renders his claim implausible. Notwithstanding the implausibility of Adams's claim that, in March of 2007, the Fourth Street Clinic prescribed treatment which included Actonel, to survive summary judgment, Adams must show that the Doctors "intentionally interfere[d] with," *Estell*, 429 U.S. at 105, the Fourth Street Clinic treatment plan. And, Adams must also show that the Defendants did more than inadvertently fail to provide proper care for his osteoporosis.

In this case, Adams cannot make either showing. The medical records and testimony plainly show that the medical personnel at the USP reviewed Adams' prior history, including the notes from the Fourth Street Clinic, quickly identified and promptly treated Adam's osteoporosis.

Summary judgment is appropriate because no genuine issues of material fact exist--that is, if no reasonable jury could return a verdict in favor of Adams. *See Vitkus v.*

8

*Beatrice Co.,* 11 F.3d 1535, 1539 (10th Cir. 1993). The existence of a factual issue does not preclude summary judgment where there is no evidence to support a dispute on that issue or the evidence is so one-sided that no reasonable could find for the other side. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986); *Williams v. Borden, Inc.,* 637 F.2d 731, 738 (10th Cir.1980). Here, all the evidence before the Court supports Defendants' contention that inmate Adams's medical needs were fully met. Adams has continually received his Actonel on a weekly basis since his return to the Utah State Prison on April 6, 2009 and he will continue to receive his Actonel on a weekly basis as long as it is medically necessary or until he paroles or is discharged from the USP. *Decl. Garden* ¶ 31, *Decl. Abbott* ¶ 27. Accordingly, inmate Adams's claims cannot withstand summary judgment.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that this Court grant Defendants' Motion for Summary Judgment.

DATED this 28th, day of February, 2012.

        MARK L. SHURTLEFF
        Utah Attorney General

        /s/ David N. Wolf
        DAVID N. WOLF
        Assistant Utah Attorney General
        Attorney for Defendants

# CERTIFICATE OF SERVICE

I certify that on February 28, 2012, I electronically filed the foregoing **DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**, using the Court's CM/ECF system, and mailed a true and correct copy by United States mail, postage prepaid, to:

William Adams, Offender No. 74653
Utah State Prison
P.O. Box 250
Draper, UT 84020
*Pro Se*

/s/ Yvonne Schenk